### UNITED STATES v. SEUFERT BROS. CO. et al.

#### (Circuit Court of Appeals, Ninth Circuit. July 1, 1918.)

#### No. 3078.

INDIANS ⚬27(5)—UNITED STATES AS TRUSTEE AND GUARDIAN—STATUTE.

In view of Act Cong. Feb. 8, 1887, as amended by Act Feb. 28, 1891, securing personal rights of citizenship and protection of laws to members of tribes of Indians to whom allotments are made under Act Feb. 8, 1887, § 6, as amended by Act May 8, 1906, United States, as trustee and guardian of Indian allottee and trust patentee of certain Indian reservation lands, cannot maintain action for damages caused to fish wheel owned and operated by Indian on Columbia river; wheel having been constructed, maintained, and repaired by Indian with funds derived from sale of 40 acres of his allotment of lands.

In Error to the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Action at law by the United States, as trustee and guardian of Sam Williams, against the Seufert Bros. Company and F. A. Seufert. A demurrer to the complaint was sustained, and plaintiff brings error. Affirmed.

Clarence L. Reames, U. S. Atty., and Robert R. Rankin, Asst. U. S. Atty., both of Portland, Or., for plaintiff in error.

A. S. Bennett, of The Dalles, Or., for defendants in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. This action is brought by the United States against the defendant in error on behalf of Sam Williams, an Indian, to recover damages to a scow fish wheel owned and operated by Williams, and for damages for loss of certain fishing seasons.

It is alleged that Sam Williams is a full-blooded Indian, born off of the territorial limits of the Yakima Indian reservation, but in the state of Washington; that his mother was a member of the Cowlitz tribe of Indians, and his father a member of the Yakima tribe; that he has lived for 21 years last past off of the reservation and on the south bank of the Columbia river, in the state of Oregon, and has there taken up a homestead under the laws of the United States, and lives there with his family, and has adopted the habits of civilized life. It is alleged that said Williams is allotted, as an allottee, No. 1525 upon the said Yakima Indian reservation, certain lands within the boundary of said reservation to which a trust patent was issued in favor of said Williams for 80 acres of land on said Yakima Indian reservation, a portion of which allotment has always been and is now held in trust for said Williams by the United States under the act of Congress approved February 8, 1887 (24 Stat. 388, c. 119), as amended by act of Congress approved February 28, 1891 (26 Stat. 794, c. 383); that said Williams is in the charge and under the control of the superintendent of the Yakima Indian reservation, who has held and now holds certain moneys and trust funds as the property and for the use of said Williams; that said Williams is by reason of the facts stated, a Yakima Indian allottee and ward of the United States; that on the 24th of January, 1910, upon petition from Williams and payment in full of the purchase price by the purchaser, the United States sold and gave title in fee by patent from the United States to one McMeachan to 40 acres of Williams' allotment on the Yakima reservation; that by this sale there was derived certain money which was placed to the credit of Williams' allotment; that a substantial portion of the fund derived from said sale was used by said Williams in the building, construction, maintenance, and repair of a scow fish wheel to be used in operating on the Columbia river. It is this scow fish wheel which was damaged, and the United States, in its alleged capacity as trustee and guardian of said Williams, brought this action to recover of the defendant compensation for such damages.

The act of February 8, 1887 (24 Stat. 388–390), secured the personal rights of citizenship and the protection of the laws to members of bands or tribes of Indians to whom allotments were made under the act. Section 6 provides as follows:

"Sec. 6. That upon the completion of said allotments and the patenting of the lands to said allottees, each and every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside; and no territory shall pass or enforce any law denying any such Indian within its jurisdiction the equal protection of the law. And every Indian born within the territorial limits of the United States to whom allotments shall have been made under the provisions of this act, or under any law or treaty, and every Indian born within the territorial limits of the United States who has voluntarily taken up, within said limits, his residence separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, and every Indian in Indian Territory is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges, and immunities of such citizens, whether said Indian has been or not, by birth or otherwise, a member of any tribe of Indians within the territorial limits of the United States without in any manner impairing

or otherwise affecting the right of any such Indian to tribal or other property." Comp. St. 1916, § 3951.

The act of May 8, 1906, amending the act of February 8, 1887 (34 Stat. 182, c. 2348), defers the time when an allottee shall have the benefit of and be subject to the laws of the state or territory in which they may reside until the expiration of the trust period of 25 years and when the lands have been conveyed to the Indian by patent in fee. It is further provided:

"That until the issuance of fee simple patents all allottees to whom trust patents shall hereafter be issued shall be subject to the exclusive jurisdiction of the United States."

By the act of March 1, 1907, making appropriations for the current and contingent expenses of the Indian Department, etc. (34 Stat. 1015–1018, c. 2285), it is provided:

"That any *noncompetent Indian* to whom a patent containing restrictions against alienation has been issued for an allotment of land in severalty, under any law or treaty, or who may have an interest in any allotment by inheritance, *may sell or convey all* or any part of such allotment or such inherited interest on such terms and conditions and under such rules and regulations as the Secretary of the Interior may prescribe, *and the proceeds derived therefrom shall be used for the benefit of the allottee or heir so disposing of his land or interest, under the supervision of the Commissioner of Indian Affairs;* and any conveyance made hereunder and approved by the Secretary of the Interior shall convey full title to the land or interest so sold, the same as if fee-simple patent had been issued to the allottee." Comp. St. 1916, § 4225.

It is contended that under these statutes Williams is a ward of the United States and that the United States in the execution of that trust was authorized to protect the personal property of the allottee, when it appears that said property was acquired with funds derived from the sale of allotted lands. When the time came for the distribution of the lands of the Indian reservations to the adult Indians residing on the reservations or belonging to the bands or tribes attached to the reservations, the United States assumed the trust of holding the lands for the Indians for a period of 25 years while the Indians were forming the habit of independence and attaining the responsibility of individual ownership and management. This guardianship was also extended to protect the Indians from the vices attending traffic in liquors, and the use by Congress of their moneys in their education and civilization (U. S. v. Nice, 241 U. S. 591–595, 36 Sup. Ct. 696, 60 L. Ed. 1192); but nowhere that we can find has the United States assumed to continue the trust after the issuance of the fee-simple title or to follow the proceeds of the sale of lands when the sale has been made by competent Indians. Where a sale has been made by a noncompetent Indian the guardianship of the proceeds of the sale was extended by the act of March 1, 1907, to that relation in a manner corresponding in some degree to a guardianship of funds belonging to a noncompetent person under the laws of the state or territory.

In the present case, the patent has been issued and the proceeds converted into a scow fish wheel, and with respect to the management

of this property it is not alleged that Williams is a noncompetent Indian. On the contrary, the presumption, as well as the inference, to be drawn from the facts stated in the complaint, is that he is individually competent to manage his own business affairs, and discharge the duties of a citizen of the United States. With this presumption and inference in his favor, and the statute not providing for the extension of the guardianship of the United States over the property or proceeds of the sale of allotted lands of competent Indians, there is but one conclusion to be drawn from the facts stated in the complaint, and that is the statute has not provided either generally or specifically that the United States shall act as a guardian for Williams in the ownership and operation of his scow fish wheel, but as to all such matters he has the full authority and responsibility of any other citizen of the United States. This we think is the meaning of section 6 of the act of February 8, 1887, as amended by the act of May 8, 1906, providing that:

"Every Indian who has voluntarily taken up * * * his residence, separate and apart from any tribe of Indians, * * * and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges, and immunities of such citizens."

In United States v. Waller, 243 U. S. 452–459, 37 Sup. Ct. 430, 432 (61 L. Ed. 843), the Supreme Court states the relation of the United States to the Indian in the following language:

"The tribal Indians are wards of the government, and as such under its guardianship. It rests with Congress to determine the time and extent of emancipation. Conferring citizenship is not inconsistent with the continuation of such guardianship, for it has been held that even after the Indians have been made citizens the relation of guardian and ward for some purposes may continue. On the other hand, Congress may relieve the Indians from such guardianship and control, in whole or in part, and may, if it sees fit, clothe them with full rights and responsibilities concerning their property or give to them a partial emancipation if it thinks that course better for their protection. United States v. Nice, 241 U. S. 591, 598 [36 Sup. Ct. 696, 60 L. Ed. 1192], and cases cited."

In that case the question was whether lands in an Indian reservation allotted and patented in trust to adults of the mixed Indian blood belonged to them with all the rights and incidents of full ownership, including the right of alienation and whether when they had conveyed such lands in ignorance of the fact that they were making a conveyance, the United States could maintain for their benefit a suit to annul the deeds upon the ground that they were procured through fraud. The claim of right to maintain such a suit was plainly based upon the supposed guardianship of the United States over the Indian in the transaction. The right to maintain the suit was denied, the court holding that the United States was without capacity to bring the action for the Indians. We are of the opinion that upon the law thus stated, the complaint does not state facts sufficient to constitute a cause of action.

The judgment of the District Court must therefore be affirmed; and it is so ordered.